VEHON v. ULLMAN.

(Circuit Court of Appeals, Seventh Circuit. August 11, 1906. Rehearing Denied, October 2, 1906.)

No. 1,248.

1. BANKRUPTCY—APPEAL—MATTERS PRESENTED FOR DECISION.

Where a referee passed upon only one of a number of objections filed to the discharge of a bankrupt which he sustained, and his report was confirmed by the District Court. an appeal from the order denying a discharge brings such objection only before the appellate court for consideration.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

2. SAME—DISCHARGE—CONCEALMENT OF ASSETS.

A bankrupt was president of a corporation engaged in a mail order business, and, as such president prepared a list of names and addresses for use in the business, and at the same time made a duplicate thereof which he kept at his house, as claimed, to guard against its loss by fire. Both he and the corporation became bankrupt and the original list was scheduled and sold as an asset of the corporation. Held, that the duplicate list was also the property of the corporation, and that the bankrupt's failure to schedule it as an asset of his own did not constitute a concealment of assets which debarred him from the right to a discharge.

3. SAME.

> While intent is a material inquiry on an issue as to the concealment of assets by a bankrupt, a fraudulent intent alone does not justify a refusal of a discharge unless assets belonging to his estate were actually concealed or withheld.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Thos. Cratty, for appellant.
Lessing Rosenthal, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

GROSSCUP, Circuit Judge. January 23rd, 1902, the appellant was adjudged a bankrupt, and on the 19th of June, of the same year, petitioned the District Court for his discharge. Objections having been filed by one Percy G. Ullman, one of the creditors, the petition with the objections were referred to the referee; and upon the referee's report that the bankrupt was not entitled to his discharge, and the exceptions to that report filed by the bankrupt, an order was entered refusing his discharge. From this order the appeal is prosecuted.

Some question is made as to what is the basis of the inquiry here, the appellee claiming that his thirteen specifications of objections to the bankrupt's discharge are before the court—the appellant insisting that the first, and the first only, of these specifications is the basis of the inquiry.

The order appealed from shows that the case in the District Court came on to be heard on the report of the referee, and the bankrupt's exception thereto, and that thereupon it was ordered that the exceptions be overruled; that the report and the recommendations herein be approved and confirmed; and that the petition for discharge be denied; to all of which the bankrupt entered his motion for an appeal.

Going back to this report of the referee, it is seen that the specification passed upon was that the bankrupt had concealed assets from his trustee, by omitting to schedule a list of names of customers, said to constitute a valuable asset; that the omission was with fraudulent intent; and was done knowingly, and in violation of the provisions of the bankruptcy act. No other specification having been passed upon by the referee, we are of the opinion that the specification set out is the only one that was before the District Court, and therefore the only one brought by appeal here.

The facts upon which this specification is based are not in doubt. Before his adjudication as a bankrupt, appellant was president of a corporation of his own name. The corporation was in what is known as the mail order business—a business requiring a list of names and addresses constantly "freshened up," by dropping useless names, and adding useful ones, to whom the corporation could address mail presenting its business. Appellant as president, prepared these lists, and at the same time made copies—the originals being transcribed into the corporation's books, the copies being taken by the bankrupt to his house—for the purpose, as he testifies, of making them safe against loss by fire. Eventually both appellant and the corporation became bankrupts, the

original lists being scheduled in the corporation's assets, and sold as a portion of such assets—the copies kept by appellant not being so sold in the corporation's assets, nor included in the schedule of his personal assets. And it is upon this alleged omission to include these copies in his list of personal assets, that the specifications of objection were based, and the decree appealed from denying the discharge proceeded.

On the face of this evidence it is plain that the copies kept at his house by the appellant, as well the originals spread upon the books of the corporation, belonged to the corporation. The copies were prepared by appellant, as president of the corporation, presumably at the cost of the corporation. They were copies of a list that was an asset of the corporation. As against the corporation, appellant could not have claimed them. As against the corporation, appellant would, upon a proper suit, have been enjoined from using them. The copies were, in no sense that we can see, an asset of his own, but were the duplicate only of an asset that belonged exclusively to the corporation of which he was president. Indeed, the report of the referee, and the decree based on that report, make no question but what this was the real state of title as between appellant and the corporation.

But because appellant at one time stated that he would like the list of names, that he might get again into the mail order business, and admitted that the list would be of value to some one engaged in the mail order business—that the list had in fact some value—the referee was of the opinion that the appellant's omission to schedule the lists as his own property was done with fraudulent intent. "The whole question" said the referee, "turns on the matter of intent." On this subject the referee and the District Court confirming him, have, in our opinion, misapplied the law. While intent is a pertinent inquiry, intent is not the sole inquiry. The substance of the offense is the withholding of assets; so that the true inquiry is whether, with fraudulent intent, he withheld from his schedule property belonging to his creditors. Apart from the withholding of assets, the intent constitutes no cause for denying a discharge; and the lists omitted, constituting no part of the property coming to the creditors, as already stated, there was no withholding of assets, and no case made out for a refusal of the discharge.

This view of the case results in a reversal of the decree below. We have hesitated whether merely to reverse the decree, opening the question of discharge to a new inquiry, or whether to reverse it with instructions to grant the discharge asked for. On reflection the latter seems to us to be the more equitable. The objecting creditor has had his day in court to prevent the discharge. On that day it was his duty to present to the court, not one reason only, but all the reasons, why the discharge should not be granted. We will therefore treat the objection considered as the whole case against discharge, and those objections having been passed upon on the merits, the order to be entered here ought to complete the transaction. The order of the District Court is therefore reversed, with instructions to sustain the bankrupt's exceptions to the master's report, and to grant the discharge.